**MOT**
ROBERT A. MASSI, ESQ.
Nevada Bar No. 002397
KRISTIE L. FISCHER, ESQ.
Nevada Bar No. 11693
**ROBERT A. MASSI, LTD.**
11201 South Eastern Avenue, Suite #100
Henderson, Nevada 89052
Telephone: (702) 870-1100
Facsimile: (702) 870-0196
Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

EVELYN ESTRADA-GROBL individually,

Plaintiffs,

vs.

UHS OF DELAWARE, INC., a Delaware corporation; HRN SERVICES, INC., a California corporation; and DOES I - X, and ROE BUSINESS ENTITIES I - X, inclusive,

Defendant,

CASE NO.: 2:13-cv-00006-GMN-VCF

**PLAINTIFF'S MOTION TO AMEND COMPLAINT AND REMAND TO STATE COURT**

Plaintiff EVELYN ESTRADA-GROBL by and through her attorneys ROBERT A. MASSI, ESQ., and KRISTIE L. FISCHER, ESQ., of the law firm ROBERT A. MASSI, LTD., hereby files her Motion to Amend Complaint and Remand to State Court pursuant to Fed. R. Civ. P. 15, 28 U.S.C. §1332, and 28 U.S.C. §1447, and as grounds states:

1. Plaintiff commenced this action in the Eighth Judicial District Court, Clark County, Nevada on December 3, 2012, alleging causes of action for Negligence, Negligent Infliction of Emotional Distress, Breach of Contract, and Respondeat Superior. There can be no dispute that these claims arise exclusively under State law.
2. Defendant HRN Services, Inc. filed a Notice of Removal on January 17, 2013. Defendant's basis for removal was the existence of diversity jurisdiction.

. . .

. . .

3. At the time Plaintiff filed her Complaint in State Court she was informed and believed that "UHS OF DELAWARE, INC." was the correct corporate name for Spring Valley Hospital. Plaintiff has since learned that "Valley Health System, LLC d/b/a Spring Valley Medical Center" is the correct corporate name.

4. Also at the time Plaintiff filed her Complaint in State court she was unaware of the names of two primary defendants: the recovery room nurse and the charge nurse responsible for providing the nursing care giving rise to Plaintiff's claims.

5. Plaintiff has since learned the recovery room nurse is one Gwyn St. Augustine and the charge nurse is one Lillian Mich, and now seeks leave to amend her complaint to substitute Gwyn St. Augustine for Defendant DOE 1 and Lillian Mich for Defendant DOE 2.

6. The interests of justice and judicial economy require Plaintiff be given leave to amend her Complaint to substitute Valley Health System, LLC d/b/a Spring Valley Medical Center for Defendant UHS OF DELAWARE, INC., Gwyn St. Augustine for Defendant DOE 1, and Lillian Mich for Defendant DOE 2.

7. Pursuant to Fed. R. Civ. P. 15 leave to amend should be freely given when, as here, the interests of justice require.

8. Plaintiff is informed and believes that both Gwyn St. Augustine and Lillian Mich are citizens of the State of Nevada. Plaintiff is also a citizen of the State of Nevada.

9. Because Plaintiff is a citizen of the State of Nevada and upon information and belief Gwyn St. Augustine and Lillian Mich are also citizens of Nevada, this Court's diversity jurisdiction will be destroyed when Gwyn St. Augustine and Lillian Mich are joined as defendants.

. . .
. . .
. . .
. . .
. . .

10. Pursuant to 28 U.S.C. §1447, when joinder of an additional defendant destroys diversity jurisdiction the case must be remanded to State court.

DATED this 29 day of January, 2013.

**ROBERT A. MASSI, LTD.**

By: ______________________________

ROBERT A. MASSI, ESQ.
Nevada Bar No. 2397
KRISTIE L. FISCHER, ESQ.
Nevada Bar No. 11693
ROBERT A. MASSI, LTD.
11201 S. Eastern Avenue, Suite #100
Henderson, Nevada 89052
*Attorney for Plaintiff*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. FACTUAL BACKGROUND

On April 6, 2012, Plaintiff Evelyn Estrada-Grobl (hereinafter "Evelyn") checked into Spring Valley Hospital for a surgical procedure to repair a nick to her bladder sustained during a previous hysterectomy. Although the surgical procedure was completed without incident, when Evelyn was transferred to the recovery room things went tragically wrong. While in the recovery room she began experiencing respiratory depression secondary to opioid pain medications. The recovery room nurse responsible for Evelyn's care administered multiple doses of Dilaudid, a drug known to cause respiratory depression. Even after her heart rate and respiration began to drop, more Dilauded was administered causing Evelyn to overdose. When Evelyn stopped breathing the nursing staff at Spring Valley hospital failed to respond appropriately and she was allowed to languish for several minutes without oxygen. As a result of the utter lack of attention, Evelyn suffered severe and permanent brain damage. It was as if the nurses assigned to care for Evelyn did not even recognize the respiratory failure she experienced, and if they did recognize it they certainly did not respond appropriately. Even after Evelyn stopped breathing, the brain damage she suffered could have been avoided if only the nursing staff had taken appropriate measures to restore respiration.

Evelyn's brain was deprived of oxygen for so long that the resulting brain damage has impaired every aspect of her life. Before Evelyn checked into Spring Valley Hospital she was a healthy, active, and vibrant young woman. In fact, Evelyn was an avid runner and by all accounts was in excellent physical health. Now she cannot even walk unassisted let alone run. Before Evelyn checked into Spring Valley Hospital she had earned a bachelor's degree in Hotel Management, was licensed as real estate agent, and was gainfully employed as a realtor. Now she cannot independently perform even the most basic tasks of daily living, let alone earn a living. She is completely disabled and must depend on her family members for assistance with everything from preparing and eating food to shopping, housekeeping, and sadly child care. In fact, Evelyn is so dependent on the assistance of her family members that her husband was forced to quit his job to care for her and assist in her rehabilitation.

Evelyn and her husband have three small children, all of whom have been devastated by the impact of their mother's injuries. Evelyn's children do not understand what has happened to their mother. They do not understand why she can no longer talk with them. They do not understand why she cannot walk unassisted or swallow her food. They do not understand why she can no longer care for them. The brain damage Evelyn suffered as a result of the negligence of the defendants named herein, as well as those fictitiously named defendants and erroneously named defendants Evelyn now seeks to substitute into this action, has destroyed the independent and productive life she had when she checked into Spring Valley Hospital on April 6, 2012. Even worse, however, it has forever changed not only Evelyn's life, but the lives of her husband and their three small children.

Evelyn is currently undergoing intensive physical therapy, occupational therapy, speech therapy, and recreational therapy, but she will never make a full recovery from the injuries she sustained during her stay at Spring Valley Hospital. She has suffered impairment in memory, fluency, visual and special organization, executive functioning (e.g. dividing her attention and reasoning), and motor skills. Evelyn is unable to walk safely on her own and is at constant risk of injury from falls. Evelyn is unable to swallow and every time she eats she is at risk of choking. She requires assistance with financial management, medication management, food preparation, shopping, housekeeping, and child care. It is unlikely that she will ever be able to live independently again.

## II. PROCEDURAL HISTORY

Evelyn initiated the instant lawsuit on December 3, 2012, naming HRN SERVICES, INC. (hereinafter "HRN"), UHS OF DELAWARE, INC. (hereinafter "UHS"), DOES I through X, and ROE BUSINESS ENTITIES I through X as Defendants. Evelyn filed her Complaint in the Eighth Judicial District Court, Clark County, Nevada. The case was later removed to the United States District Court for the District of Nevada pursuant to this Court's diversity jurisdiction.

At the time Evelyn filed her Complaint, she was informed and believed that "UHS of Delaware, Inc." was the correct corporate name for Spring Valley Hospital. Evelyn has since learned that Valley Health System, LLC d/b/a Spring Valley Medical Center (hereinafter "Spring Valley") is

the correct corporate name for Spring Valley Hospital. Accordingly, it is Spring Valley and not UHS that is responsible for operating and providing health care at Spring Valley Hospital, and therefore it is Spring Valley and not UHS that should be named as a defendant in this action. UHS and Spring Valley have indicated that they do not oppose Evelyn's request to amend her Complaint to substitute Spring Valley in for UHS. See correspondence from counsel for UHS and Affidavit of Mia Meloni, Esq. attached hereto as **Exhibit 1.**

Also at the time Evelyn filed her Complaint, she did not know the true name of the recovery room nurse or the charge nurse, and accordingly named the recovery room nurse as Defendant DOE 1 and the charge nurse as Defendant DOE 2. In her Complaint, Plaintiff set forth the following allegations regarding fictitious defendants DOE 1 and DOE 2:

> 7. That Defendant DOE 1 is, and at all times relevant hereto has been, a recovery room nurse authorized to practice, and actually practicing, the nursing profession in Clark County, Nevada, and holding himself or herself out to the general public as a nurse duly licensed to practice the profession of nursing under and by virtue of the laws of the State of Nevada.
>
> 8. That Defendant DOE 2 is, and at all times relevant hereto has been, a charge nurse authorized to practice, and actually practicing, the nursing profession in Clark County, Nevada, and holding himself or herself out to the general public as a nurse duly licensed to practice the profession of nursing under and by virtue of the laws of the State of Nevada.
>
> . . .
>
> 11. That Defendant DOE 1, the recovery room nurse, and Defendant DOE 2, the charge nurse, were responsible for administering nursing care to Plaintiff at all times while Plaintiff was in the recovery room following the April 6, 2012 surgery.
>
> 12. That Defendant DOE 2, the charge nurse, was responsible for overseeing the actions of Defendant DOE 1 and the care of Plaintiff at all times while Plaintiff was in the recovery room following the April 6, 2012 surgery.
>
> 13. That Defendants DOE 1 and DOE 2 failed to properly administer nursing care to Plaintiff while Plaintiff was in the

recovery room following the April 6, 2012 surgery by, inter alia:

(a) Failing to clarify the standing orders provided by the anesthesiologist,

(b) Failing to rescue Plaintiff when she began to experience respiratory depression secondary to opioids,

(c) Failing to possess sufficient knowledge, training, and/or experience to recognize, interpret, and respond to clinical cues of distress when Plaintiff began to experience respiratory depression secondary to opioids,

(d) Failing to call the appropriate code when Plaintiff began to experience respiratory depression secondary to opioids,

(e) Failing to obtain an appropriate physician response when Plaintiff began to experience respiratory depression secondary to opioids,

(f) Failing to administer Narcan in a timely manner,

(g) Failing to keep and maintain adequate records,

(h) Failing to follow physician's orders.

14. That the failure of Defendant DOE 1 and Defendant DOE 2 to properly administer nursing care to Plaintiff while Plaintiff was in the recovery room following the April 6, 2012 surgery, constitutes a failure on the part of Defendant DOE 1 and Defendant DOE 2 to exercise the degree of care, diligence and skill ordinarily exercised by nurses in good standing in the community.

15. That Defendant DOE 2 failed to properly oversee the actions of Defendant DOE 1 and the care of Plaintiff while Plaintiff was in the recovery room following the April 6, 2012 surgery.

16. That the failure of Defendant DOE 2 to properly oversee the actions of Defendant DOE 1 and the care of Plaintiff, constitutes a failure on the part of Defendant DOE 2 to exercise the degree of care, diligence and skill ordinarily exercised by nurses in good standing in the community."

Complaint, p.2:14-21; 3:3-4:7. A true and correct copy of Plaintiff's Complaint is attached hereto as **Exhibit 2**.

Following removal, Evelyn learned the true identity of Defendant DOE 1 and Defendant DOE 2. Based on this information Evelyn now seeks to amend her Complaint to substitute Gwyn St. Augustine (hereinafter "St. Augustine") for Defendant DOE 1 and Lillian Mich (hereinafter "Mich") for Defendant DOE 2.

## III. ARGUMENT

Pursuant to Fed. R. Civ. P. 15, Evelyn brings this motion seeking leave to amend her Complaint to properly name Spring Valley, St. Augustine, and Mich. Fed. R. Civ. P. 15(a)(1) provides, "The court should freely give leave when justice so requires." Here, justice requires leave be given to allow Evelyn to amend her Complaint for the following reasons: (1) UHS and Spring Valley have no objection to the substitution of Spring Valley for UHS; (2) No party will be prejudiced by the substitution of Spring Valley in place of UHS; (3) Evelyn has complied with Nevada's fictitious pleading rules and exercised reasonable diligence to determine the identities of St. Augustine and Mich, who she now seeks to substitute in for Defendant DOE 1 and Defendant DOE 2; (4) If Evelyn is not granted leave to amend her Complaint she will be forced to file a separate action against St. Augustine and Mich, which will unnecessarily increase the cost to litigate the claims at issue and cause substantial judicial waste; and (5) No party will be prejudiced by the substitution of St. Augustine and Mich in place of Defendant DOE 1 and Defendant DOE 2. A true and correct copy of the Proposed Amended Complaint is attached hereto as **Exhibit 3**.

Pursuant to 28 U.S.C. §1447(e), Evelyn brings this motion seeking remand of this matter back to state court. 28 U.S.C. §1447(e) states,

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court.

Here, joinder of St. Augustine and Mich should be granted in the interests of justice, and because such joinder will destroy diversity jurisdiction this matter must be remanded to State court.

### A. <u>Leave To Amend Should Be Freely Given When Justice So Requires.</u>

#### 1. Leave To Amend To Substitute Spring Valley For UHS Should Be Given Because Neither Spring Valley Nor UHS Objects To The Substitution.

UHS and Spring Valley have indicated that they do not oppose Evelyn's request to amend her Complaint to substitute Spring Valley in for UHS. Specifically, counsel for

UHS has stated, "Please be advised that we are able to sign a Stipulation and Order to remand this case back to District Court with the understanding that Valley Health System, LLC d/b/a Spring Valley Hospital will replace UHS of Delaware, Inc. as a party in the above-referenced matter." Correspondence from counsel for UHS and Affidavit of Mia Meloni, Esq. attached hereto as **Exhibit 1**.

**2. Leave To Amend To Substitute Spring Valley For UHS Should Be Given Because No Party Will Be Prejudiced By This Substitution.**

Neither HRN, St. Augustine, nor Mich will be effected in any manner whatsoever by the substitution of Spring Valley in place of UHS. UHS and Spring Valley have indicated that they do not oppose the substitution. Finally, the substitution is merely intended to correct the corporate name of the entity responsible for operating the hospital where Evelyn's injuries were sustained. As the substitution is merely a name correction, the interested parties do not oppose it, and all other parties are unaffected, it is indisputable that no party will be prejudiced by the substitution of Spring Valley for UHS.

**3. Leave To Amend To Substitute St. Augustine And Mich For Does 1 And 2 Should Be Given Because Evelyn Properly Utilized Nev. R. Civ. P. 10 To Identify St. Augustine And Mich.**

Nevada Rules of Civil Procedure, Rule 10, provides, "A party whose name is not known may be designated by any name, and when the true name is discovered, the pleading may be amended accordingly." In commenting upon the application of Nev. R. Civ. P. 10, the United States District Court for the District of Nevada has stated, "[M]eritorious causes of action should not be frustrated where, despite reasonable diligence, the true identity of culpable parties is uncertain or unknown to plaintiff or plaintiff's counsel." Putzer v. Whorton, 2009 WL 2949524, 1, 3 (D. Nev. 2009) (*quoting* Nurenberger Hercules-Werke GMBH v. Virostek, 107 Nev. 873, 878, 822 P.2d 1100, 1103 (1992)). Thus, NRCP 10 should be applied liberally to allow plaintiffs to pursue redress from all wrongdoers. Calloway v. City of Reno, 113 Nev. 564, 571, 939 P.2d 1020, 1024 (1997).

Proper utilization of Nev. R. Civ. P. 10(a) requires three things: (1) fictitious defendants must be inserted into the caption of the Complaint; (2) the Complaint must set forth the basis for naming defendants fictitiously and specify the connection between the intended defendants and the conduct on which the Complaint is based; and (3) the plaintiff must exercise reasonable diligence in ascertaining the true identity of the fictitiously named defendants and once ascertained promptly amend the pleading accordingly. Nurenberger, 107 Nev. 873 at 881, 822 P.2d 1100 at 1106.

Evelyn has met the requirements of Nev. R. Civ. P. 10(a), as set forth in Nurenberger. First, it cannot be disputed that Evelyn inserted fictitious defendants into the caption of the Complaint. *See* Complaint, p.1. Similarly, Evelyn's Complaint sets forth the basis for naming defendants fictitiously and specifies the connection between St. Augustine and Mich on the one hand and Defendants Doe 1 and 2 on the other. Specifically, Evelyn's Complaint states the fictitious defendants are not named with certainty because their names were not known at the time the Complaint was filed and specifies the connection between the intended Defendants (i.e. the recovery room nurse and the charge nurse) and the conduct on which the Complaint is based (i.e. the failure of the recovery room nurse and the charge nurse to render nursing care to Evelyn in accordance with their duty to do so with reasonable diligence and skill). Finally, Evelyn exercised reasonable diligence in ascertaining the identity of the delivery room nurse and the charge nurse and promptly sought leave to amend once these individuals had been identified as St. Augustine and Mich. Accordingly, Evelyn has met the requirements of Nev. R. Civ. P. 10.

(a) Plaintiffs Named Fictitious Defendants in the Caption of the Original Complaint.

It is undisputed that Evelyn named fictitious defendants in her Complaint. The caption of the Complaint lists the following Defendants: "UHS OF DELAWARE, INC., a Delaware corporation; HRN SERVICES, INC., a California corporation; and DOES I – X, and ROE BUSINESS ENTITIES I – X, inclusive." The fictitiously named defendants are those listed as DOES and ROE ENTITIES. Thus, this element is not in dispute.

(b) The Complaint Sets Forth the Basis for Naming Defendants Fictitiously and Specifies the Connection Between the Intended Defendants and the Conduct on which the Complaint is Based.

In Nurenberger, the plaintiff filed a complaint against various identified and fictitious defendants on a theory of strict products liability. 107 Nev. 873 at 881, 822 P.2d 1100 at 1106. The actual manufacturer of the product at issue was not identified in the original complaint, but the Court held plaintiff's counsel "properly pleaded uncertainty as to defendants' true names by including fictitious doe defendants as permitted by Rule 10(a), and then clearly identified the target of the complaint as the party or parties who 'designed, manufactured, assembled and marketed, advertised and otherwise supplied into the stream of commerce' the defective [product]." Id. at 880, 1105.

Here, Evelyn properly pleaded uncertainty as to the true names of St. Augustine and Mich by including fictitious defendants in the caption and clearly identifying the recovery room nurse and the charge nurse as targets of the Complaint. *See* Complaint, p.2:14-21 and p.3:3-4:7. The Complaint sets forth the basis for naming defendants fictitiously as follows:

> That Plaintiff is unaware of the true names and legal capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as Does I through X and Roe Business Entities I through X, inclusive, and therefore sues said Defendants by their fictitious names . . . Plaintiff is informed and believes and on that basis alleges that each of the Defendants designated herein as a DOE or a ROE is in some way legally responsible and liable for the events referred to herein and proximately caused the damages alleged herein.

Complaint, p 2:3-9. The Complaint further alleges the basis for asserting claims against the intended fictitious defendants by alleging that the fictitiously named defendants "were agents, servants, employees or joint venturers of every other Defendant herein, and were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants. . ." Complaint, p. 2:10-13. Thus, Evelyn clearly alleged that she was naming the fictitious defendants by other than their true identities because those true

identities were at the time unknown, and she reasonably believed those fictitious defendants were liable to her on the causes of action, and under the theories of liability asserted, in the Complaint.

In fact, Evelyn went further than the Plaintiff in Nurenberger, by including detailed allegations making specific reference the recovery room nurse, the charge nurse, the duties of both the recovery room nurse and charge nurse, and the breaches of duty of both the recovery room nurse and charge nurse. Id. Thus, the Complaint made a clear connection between fictitiously named defendants St. Augustine and Mich, and the conduct that is the basis of the Complaint: the failure of Spring Valley, HRN, the recovery room nurse, and the charge nurse to meet the standard of care required of nurses, nursing agencies, and hospitals in good standing in the community.

The requirement that Plaintiffs specify the connection between intended defendants and the conduct on which the complaint is based is aimed at preventing Plaintiffs from using the fictitious pleading mechanism as nothing more than a precaution where new theories of liability may arise after filing the Complaint. *See* Nurenberger, 107 Nev. 873 at 881, 822 P.2d 1105 ("fictitious defendants may not be properly included in a complaint merely as a precautionary measure in the event theories of liability other than those set forth in the complaint are later sought to be added by amendment."). In Putzer v. Whorton, 2009 WL 2949524, 1, 3 (D. Nev. 2009), a Federal §1983 action, the court distinguished between a party substituted in for a fictitious defendant under a theory of liability inserted in the original complaint and a party substituted in under a different theory not asserted in the complaint. There, the Plaintiff alleged in his complaint that caseworkers violated his due process rights by failing to hold a required meeting. Later he sought to amend his complaint to add both a social worker and an employee of the Nevada Department of Corrections responsible for overseeing the caseworker involved. The court allowed the amendment as to the caseworker, but not as to the employee responsible for overseeing the caseworker. The court reasoned that in attempting to add the employee responsible for overseeing the caseworker, "Plaintiff is attempting to revise the theory of his complaint to include the officials who reviewed the recommendations of the caseworkers he originally sued." Id.

. . .

Here, Evelyn does not assert any new theory of liability in her proposed Amended Complaint, nor does she seek to revise her theory of liability. Evelyn's Complaint included allegations aimed at those parties, whether known or unknown, who were responsible for providing nursing care to her while in the recovery room. She included specific allegations regarding the recovery room nurse's duties and breaches of those duties. She included specific allegations regarding the charge nurse's duties and breaches of duties. A comparison of the Complaint and the proposed Amended Complaint shows that no new theories of liability will be added when St. Augustine and Mich are named specifically rather than as fictitious defendants. *See* Proposed Amended Complaint attached hereto as **Exhibit 3**.

(c) Evelyn Exercised Reasonable Diligence in Ascertaining the True Identity of St. Augustine and Mich.

Evelyn used reasonable diligence and promptly sought to amend her Complaint to name St. Augustine and Mich as defendants. The Complaint was filed less than two months ago, no responsive pleadings have yet been filed, and the statutory limitations period will not expire until 2014. This case is in its earliest stages, discovery has not begun and it is anticipated that St. Augustine and Mich will be served with the Amended Complaint before discovery begins. Thus, it cannot be disputed that Evelyn has acted with reasonable diligence in determining the identity of the recovery room nurse and charge nurse, and seeking to amend to substitute St. Augustine and Mich for Defendant Doe 1 and Defendant Doe 2.

Because Plaintiffs properly utilized NRCP 10(a) by (1) inserting fictitious defendants into the caption of the Complaint; (2) setting forth the basis for naming defendants fictitiously and specifying the connection between the intended defendants and the conduct on which the Complaint is based; and (3) exercising reasonable diligence in ascertaining the true identity of the fictitiously named defendants and once ascertained promptly seeking leave to amend the Complaint accordingly, leave to amend should be granted.

. . .

. . .

. . .

**4. Leave To Amend To Substitute St. Augustine And Mich For Does 1 And 2 Should Be Given Because Justice And Judicial Economy So Require.**

In determining whether the interests of justice require leave to amend be granted, this court enjoys broad discretion, but motions to amend a complaint should be freely granted when justice requires. *See. e.g.* Layton v. Blue Giant Equipment Co. of Canada, Ltd., 105 F.R.D. 83 (E.D. Pa. 1985) ("It is well established that: Fed. R.Civ. P. 15(a) permits amendment of the complaint "freely" where the interests of justice so require, and the defendant will not be unfairly prejudiced.") (internal citations omitted); Austwick v. Board of Educ. Of Tp. High School Dist. No. 113, Lake County, 555 F.Supp. 840, 842 (N.D.Ill. 1983) (holding plaintiff was entitled to dismissal of federal claims and to file an amended complaint including state claims); Pitts v. Dow Chemical Co., 859 F.Supp. 543 (M.D. Ala. 1994) (holding justice required leave to amend complaint be granted even though amendments would be futile).

Here, the justice requires leave to amend be granted to avoid the litigation of claims against an incorrect entity and the unnecessary expense and judicial waste associated with piecemeal litigation. If Spring Valley is not substituted for UHS, Evelyn will be forced to litigate the claims she intended to assert against the hospital responsible for her injuries against an entity who is not responsible for providing health care at that hospital. This would be nonsensical and prejudicial to all parties. Moreover, neither Spring Valley nor UHS opposes the substitution of Spring Valley for UHS. Similarly, if St. Augustine and Mich are not substituted for Defendants DOE 1 and DOE 2 Evelyn will be forced to institute a separate and duplicative action against St. Augustine and Mich in State court, thereby doubling the cost of litigating her claims and risking inconsistent rulings. This case is in its infancy, no trial date has been set, no discovery has been conducted, and there will be no waste or unnecessary cost caused by allowing Evelyn to amend her Complaint to substitute Spring Valley for UHS, St. Augustine for Defendant DOE 1 and Mich for Defendant DOE 2.

. . .

. . .

. . .

. . .

**5. Leave To Amend To Substitute St. Augustine And Mich For Does 1 And 2 Should Be Given Because No Party Will Be Prejudiced By This Substitution.**

Although Evelyn will be substantially prejudiced if leave to amend is denied, no party to this action will be prejudiced in any manner if leave to amend is granted. Neither HRN nor Spring Valley will be harmed in any way by the joinder of St. Augustine and Mich to this action. The only impact joinder will have on HRN and Spring Valley is that it will require this case be remanded to State court, but the mere requirement that a case be remanded does not constitute prejudice. HRN and Spring Valley will be afforded the same opportunity to conduct discovery and defend against Evelyn's claims in State court as they would be afforded in this Court. Accordingly, leave to amend should be granted and this case should be remanded to State court because no party will be prejudiced by the granting of the relief requested.

**B. Remand Is Required Where Joinder Destroys Diversity.**

The United States Constitution limits federal district court jurisdiction, in pertinent part, as follows: "The judicial power shall extend to all cases, in law and equity . . . between citizens of different states . . .". U.S. Const. art. III, §2. In accordance with this constitutional mandate, the statute governing diversity jurisdiction provides: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between (1) citizens of different States . . ." 28 U.S.C. §1332(a)(1). This statute has long been interpreted to require complete diversity between plaintiffs and defendants. *See e.g.* Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S.Ct. 467, 472 (1996). Thus, in order for diversity jurisdiction to exist no plaintiff may share citizenship with any defendant. Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 388, 118 S.Ct. 2047, 2052 (1998) ("A case falls within the federal court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State."). The purpose of this statute, and the policy underlying its strict construction, is to close the federal courts to litigants who properly should litigate their disputes in state courts unless there is real and complete diversity of citizenship. Steinberg v. Toro, 95 F.Supp. 791 (D.C. Puerto Rico 1951).

In accordance with the constitutional and statutory limitations on this Court's jurisdiction, 28 U.S.C. §1447(e) provides as follows:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State Court.

Evelyn brings this motion seeking remand of this matter to state court on the basis that joinder of St. Augustine and Mich should be granted in the interests of justice, and such joinder will destroy diversity jurisdiction. This Court should exercise its discretion and, in the interests of justice and judicial economy, grant Evelyn leave to amend her Complaint and remand this matter to State court.

**1. Joinder Should Be Granted In The Interests Of Justice And Judicial Economy.**

Where multiple and duplicative lawsuits can be avoided by remand, the court must consider whether in the interests of justice a case should be remanded back to State court. *See e.g.* Mensah v. World Truck Corp., 210 F.Supp.2d 320, 322 (2002). Mensah involved a case originally filed in State court in New York and timely removed to Federal court based on diversity jurisdiction. After removal, two separate actions were filed in State court, and were not removed. Ultimately, an untimely motion to remand was filed, and although the motion was not opposed the case is instructive because the Court analyzed the motion to remand under 28 U.S.C. §1447(e). The court stated, "In an effort to avoid piecemeal litigation and the risk of inconsistent and contradictory results, the Court hereby finds that the interests of justice will be served by remanding this matter to the state court in which it was originally filed." Id. The court went on to note that remand would allow all of the claims of the parties to be heard in one forum, which would reduce the risk of inconsistent rulings and provide a comprehensive resolution to the case. Finally the court stated, "The most logical, economical and equitable approach is to determine the respective rights and liabilities of all relevant parties inter se in one proceeding." Id. (quoting Morze v. Southland Corp., 816 F.Supp. 369, 371 (E.D. Pa. 1993)).

Here, the interests of justice and judicial economy dictate that leave to amend should be granted and this case should be remanded to State court to avoid the unnecessary expense and judicial waste associated with piecemeal litigation. If this case is not remanded to State court, St. Augustine and Mich cannot be joined as defendants and Evelyn will be forced to institute a separate and duplicative action in State court. This case is in its infancy, no trial date has been set, no discovery has been conducted, and there will be no waste or unnecessary cost caused by remanding this case to State court.

**2. Remand Must Be Granted Once St. Augustine And Mich Are Joined.**

"When joinder of a nondiverse party would destroy subject matter jurisdiction, 28 U.S.C. §1447(e) applies and provides the district court two options: (1) deny joinder, or (2) permit joinder and remand the action to state court . . . The district court may not permit joinder of a nondiverse defendant and retain jurisdiction." Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 759 (7th Cir. 2009). Once a district court determines the joinder of a non-diverse defendant has destroyed subject matter jurisdiction, the court must remand to state court - it has no discretion to dismiss rather than remand. Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d 1238,1245 (10th Cir. 2005). Not only is remand required, but where joinder of a nondiverse defendant destroys diversity jurisdiction an order remanding the case to state court is "beyond review." Murray v. State Farm Fire and Casualty Co., 870 F.Supp. 123, 125 (1994) ("Our Court of Appeals has upheld remand where a party was joined after removal, thereby defeating diversity jurisdiction, and held a remand based upon such grounds to be beyond review.").

Here, joinder of non-diverse defendants St. Augustine and Mich will destroy subject matter jurisdiction and trigger application of 28 U.S.C. §1447(e). Evelyn's Complaint includes the following causes of action: Negligence, Negligent Infliction of Emotional Distress, Breach of Contract, and Respondeat Superior. Each of these claims arises under the common law of the state of Nevada, and no federal question is at issue. As such, it cannot be disputed that Plaintiffs' claims arise exclusively under state law, and complete diversity is required for this Court to retain subject matter jurisdiction.

Complete diversity exists only where the citizenship of all defendants is different from that of all plaintiffs. The citizenship of an individual is determined by domicile, which is in turn determined by (1) residence and (2) intent to remain. Computer People, Inc. v. Computer Dimensions Intern, Inc., 638 F.Supp. 1293, 1295 (M.D. La. 1986). "The place where a person lives is taken to be his proper domicile until the evidence establishes the contrary." Id. (*citing* District of Columbia v. Murphy, 314 U.S. 441, 455, 62 S.Ct. 303, 309-11 (1941). Evelyn resides in Nevada, has done so for many years, and intends to remain here indefinitely. There is no evidence to demonstrate Evelyn is domiciled anywhere other than Nevada. Therefore, Evelyn is a citizen of Nevada for purposes of diversity jurisdiction. Upon information and belief, St. Augustine and Mich are also citizens of Nevada. Both St. Augustine and Mich worked at Spring Valley Hospital at the time of the incidents that form the basis of Evelyn's Complaint. Based on the employment of St. Augustine and Mich in Las Vegas, Nevada, it is more probable than not that both are domiciled in Nevada. Because Plaintiffs, as well as Defendants St. Augustine and Mich, are citizens of Nevada, the addition of St. Augustine and Mich to the case will destroy the complete diversity required for subject matter jurisdiction in this court and therefore this court will be without subject matter jurisdiction.

## IV. Conclusion

Based on the foregoing, Plaintiff requests she be granted leave to amend her Complaint to substitute Valley Health System, LLC d/b/a Spring Valley Medical Center for Defendant UHS OF DELAWARE, INC., Gwyn St. Augustine for Defendant DOE 1 and Lillian Mich for Defendant DOE 2. The interests of justice and judicial economy require Plaintiff be given leave to amend her Complaint as requested. Pursuant to Fed. R. Civ. P. 15 leave to amend should be freely given when, as here, the interests of justice require.

. . .

. . .

. . .

. . .

Plaintiff further requests this case be remanded to State Court as diversity jurisdiction will be destroyed with the joinder of Gwyn St. Augustine and Lillian Mich as defendants. Because Plaintiff is a citizen of the State of Nevada and upon information and belief Gwyn St. Augustine and Lillian Mich are also citizens of Nevada, this Court's diversity jurisdiction will be destroyed when Gwyn St. Augustine and Lillian Mich are joined as defendants. Pursuant to 28 U.S.C. §1447, when joinder of an additional defendant destroys diversity jurisdiction the case must be remanded to State court.

DATED this 29 day of January, 2013.

**ROBERT A. MASSI, LTD.**

By: ______________________

ROBERT A. MASSI, ESQ.
Nevada Bar No. 2397
KRISTIE L. FISCHER, ESQ.
Nevada Bar No. 11693
ROBERT A. MASSI, LTD.
11201 S. Eastern Avenue, Suite #100
Henderson, Nevada 89052
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of ROBERT A. MASSI, LTD., and that on the 30 day of January, 2013, I served a true and correct copy of the foregoing **MOTION TO AMEND COMPLAINT AND REMAND TO STATE COURT**, by depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

David J. Mortensen, Esq.
ALVERSON, TAYLOR, MORTENSEN & SANDERS
7401 W. Charleston Boulevard
Las Vegas, NV 89117

Kenneth Webster, Esq.
HALL PRANGLE & SCHOONVELD, LLC
775 N. Rainbow Boulevard
Suite 225
Las Vegas, Nevada 89107

[signature]
An employee of ROBERT A. MASSI, LTD.